

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-20-00020-CV

PHILIP J. EMERSON, JR., Appellant

V.

HOLLY LAKE RANCH ASSOCIATION, ET AL., Appellees

On Appeal from the 402nd District Court
Wood County, Texas
Trial Court No. 2019-680

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Stevens

# O P I N I O N

Philip J. Emerson, Jr., filed a motion challenging the trial court's March 12, 2020, order denying Emerson's claim of inability to afford payment of court costs. We affirm the trial court's order.

## I. Background

On November 14, 2019, Emerson filed a Statement of Inability to Afford Payment of Court Costs (Statement) in the 402nd Judicial District Court of Wood County in trial court cause number 2019-680, styled *Philip J. Emerson, Jr. v. Holly Lake Ranch Association, et al*. Wood County District Clerk Donna Huston filed a sworn motion contesting Emerson's alleged inability to afford payment of court costs. Following a hearing on March 12, 2020, the trial court sustained the contest and issued an order denying Emerson's claim of inability to afford payment of court costs. Emerson timely filed a motion in this Court, in accordance with Rule 145(g) of the Texas Rules of Civil Procedure, challenging the trial court's order. *See* TEX. R. CIV. P. 145(g)(1)–(2). We review the trial court's order for an abuse of discretion. *See In re N.V.R.*, No. 06-17-00022-CV, 2017 WL 727261, at *1 (Tex. App.—Texarkana Feb. 24, 2017, no pet.) (mem. op.).

## II. Applicable Law

Rule 145(a) of the Texas Rules of Civil Procedure states, "A party who files a Statement of Inability to Afford Payment of Court Costs cannot be required to pay costs except by order of the court as provided by this rule." TEX. R. CIV. P. 145(a). "The declarant must provide in the Statement, and, if available, in attachments to the Statement, evidence of the declarant's inability to afford costs." TEX. R. CIV. P. 145(e). Notwithstanding the filing of a Statement, the court may order the declarant to pay costs pursuant to Rule 145(f):

2

(1)     *On Motion by the Clerk or a Party*.  The clerk or any party may move to require the declarant to pay costs only if the motion contains sworn evidence, not merely on information or belief:

(A)     that the Statement was materially false when it was made; or

(B)     that because of changed circumstances, the Statement is no longer true in material respects.

TEX. R. CIV. P. 145(f)(1)(A), (B); *see In re A.M.*, 557 S.W.3d 607 (Tex. App.—El Paso 2016, no pet.).

That said, a party who files a Statement may not be required to pay court costs unless the trial court holds an oral evidentiary hearing, with proper notice given to the declarant.  At the hearing, the burden is on the declarant to prove his inability to afford the payment of court costs. *See* TEX. R. CIV. P. 145(f)(5).  "In the trial court, the test for determining indigence is whether the record as a whole shows by a preponderance of the evidence that the applicant would be unable to pay the costs, or a part thereof, or give security therefor, if he really wanted to and made a good-faith effort to do so." *Silver v. Toyota Motor Mfg. Tex., Inc.*, No. 04-19-00409-CV, 2019 WL 5196402, at *2 (Tex. App.—San Antonio Oct. 6, 2019, no pet.) (per curiam) (mem. op.) (quoting *Basaldua v. Hadden*, 298 S.W.3d 238, 241 (Tex. App.—San Antonio 2009, no pet.) (per curiam)). If the trial court determines that the declarant can afford to pay court costs, the trial court must issue an order containing detailed findings. *See* TEX. R. CIV. P. 145(f)(6).

## III.    Discussion

Emerson's Statement was made under penalty of perjury, as required by Rule 145, and was filed by the clerk.[1]   The Statement indicated that Emerson was not represented by legal aid, did not apply for such representation, and did not receive needs-based public benefits.  The Statement further indicated, however, that Emerson had no monthly income, had $150.00 in cash and a total of $35.00 in the bank, owned a 2014 Ford F250 truck valued at $25,000.00, and owned four lots in Holly Lake Ranch with a total value of $400.00.  The Statement reflected total monthly expenses of $3,351.00 and a student loan debt of approximately $215,000.00.

At the hearing, Huston testified that she questioned the value of the Holly Lake Ranch lots listed on Emerson's Statement, valued at $400.00.  Huston checked the records of the Wood County Appraisal District, which indicated that the lots were valued at $1,000.00.  She also introduced into evidence Emerson's Ally Bank statement submitted in response to her contest.  The bank statement reflected several deposits into Emerson's Ally Bank account from July through October 2019, totaling $7,853.84.  It appears that the bulk of those deposits were made by wire transfer from Emerson's Fidelity Investments brokerage account; other deposits were made via eCheck.[2]

---

[1]"The clerk may refuse to file a Statement that is not sworn to before a notary or made under penalty of perjury.  No other defect is a ground for refusing to file a Statement," but if the statement contains a material defect or omission, the declarant may be directed by the court to correct or clarify the statement.  TEX. R. CIV. P. 145(d).  Emerson's affidavit was filed by the clerk, and he was not directed to correct or clarify it.

[2]Records from Fidelity Investments indicate that Emerson made a withdrawal from his Fidelity Investments brokerage account in the amount of $9,549.54.  Those funds were deposited by wire transfer in the Ally Bank account on April 17, 2019.  That deposit predated the date range of the Ally Bank statement introduced as a hearing exhibit.  The Fidelity records further indicated that a wire transfer from Fidelity to Ally Bank took place on August 9, 2019, in the amount of $1,162.07, and that another such transfer in the amount of $5,732.41 took place on July 2, 2019.

4

Emerson's Ally Bank account balance on October 24, 2019, was $19.60. Debits reflected on the Ally Bank statement appear to be for ordinary living expenses, with the exception of several TXEFILE charges, one charge of $107.00 to Hollywood Nails, one charge of $85.00 to Nails by Amy, and several large payments to American Express and various credit cards.

In a June 24, 2019, declaration made by Emerson in conjunction with a lawsuit, he indicated that, at his most recent job, he earned over $200,000.00 between September 2017 and December 2017. Exhibits introduced and accepted into evidence at the hearing also included:

(1) a September 8, 2019, contract for real and personal property that listed Emerson as the buyer of Lots 230 and 231 of Holly Lake Ranch, including a singlewide manufactured home, for the consideration of $110.00;

(2) a January 10, 2020, open records request to the Wood County Sheriff's Office from Emerson requesting various documents, in which Emerson stated that he was "prepared to pay reasonable costs for copying—within the guidelines of the Act";

(3) a case transaction summary for Emerson in trial court case number 2019-680 reflecting total court costs of $22,679.00, $16,472.00 of which was for copies and $4,900.00 of which was for constable services;

(4) the April 16, 2018, unsworn declaration of Philip J. Emerson, Jr., stated that he owns six lots in the Holly Lake Ranch Development;[3]

---

[3]Emerson stated that he owns lots 1, 2, 27, 84, 276, and 333, but the Sheriff sold lots 84 and 276 in May 2019.

(5) a page from one of Emerson's pleadings in trial court case number 2019-680 stating that he "earned more than $220,000.00 at [his] last job over a period of time of less than four months [and that, o]n January 5, 2020, [he] worked at a billable rate of $75.00 per hour"; and

(6) a 2019 declaration of Philip "P J" Emerson, Jr., stating that "[w]hile awaiting trial, [he] completed an accounting degree program at the University of Texas at Tyler . . . [and then] went to law school at St. Mary's University School of Law."

Emerson testified that, in addition to the Ally Bank and Fidelity Investment exhibits, he did not have additional evidence regarding those accounts or any other accounts in his possession or control that would show the court that he had no funds.

Emerson further testified that he received his accounting degree in May 2016 and that he thereafter attended St. Mary's Law School from August 2016 through December 2018, although he did not graduate.[4] He testified that he also had a Texas adjuster's license and had worked for attorney Erick Platten since January 5, 2020, making $75.00 an hour, depending on the work; he also testified that he sometimes earns $37.50 an hour. Emerson had no evidence that he had sought and had been unable to find employment. Emerson conceded that he had money coming in but stated that it was not enough to cover his credit card debts. He has not advertised his services as an accountant since he began working for Platten. Emerson did not look for work—other than in the accounting field—before he began working for Platten.

After hearing this evidence, the trial court issued the following detailed findings in accordance with Rule 145(f)(6):

---

[4]Emerson testified that his law school grades were good and that he was eligible to return.

1. PLAINTIFF HAS FILED MULTIPLE LAWSUITS IN THE 402ND DISTRICT COURT, EACH ALLEGING SIMILAR INCIDENTS AGAINST THE SAME OR SIMILAR DEFENDANTS. THE PLEADINGS FILED BY PLAINTIFF IN EACH OF THESE LAWSUITS ARE EXTREMELY AND UNUSUALLY VOLUMINOUS, CONTAINING HUNDREDS AND HUNDREDS OF PAGES.

2. IT APPEARS TO THE COURT THAT THE PLAINTIFF IS INTENTIONALLY RUNNING UP THE COSTS IN THESE CASES DUE TO THE VOLUMINOUS PLEADINGS WHICH ARE EITHER REDUNDANT OR UNNECESSARY TO PURSUE ANY OF HIS CAUSES OF ACTION.

3. PLAINTIFF PAID $1,915 IN COURT COSTS IN ONE OF HIS OTHER LAWSUITS (NOT INCLUDED IN THIS HEARING OR ORDER) IN THE 402ND DISTRICT COURT IN 2019 WITH NO CLAIM OF INABILITY TO PAY COSTS.

4. PLAINTIFF HAS AN ACCOUNTING DEGREE.

5. WHILE PLAINTIFF HAS ATTENDED LAW SCHOOL, HE IS NOT LICENSED TO PRACTICE LAW.

6 PLAINTIFF HAS DONE AND CONTINUES TO DO RESEARCH AND APPELLATE WORK FOR ATTORNEY ERIC PLATTEN AT A RATE OF $75.00 AN HOUR (A FACT THAT HE DOES NOT INCLUDE IN HIS SWORN AFFIDAVIT OR INABILITY TO PAY COSTS).

7. PLAINTIFF HAS ALSO WORKED AS A FEDERAL FLOOD ADJUSTER AND IS STILL QUALIFIED TO PERFORM SUCH WORK.

8. PLAINTIFF EARNED $200,000 WITHIN A FOUR MONTH PERIOD OF TIME IN 2017.

9. BETWEEN JULY AND OCTOBER OF 2019, PLAINTIFF MADE WIRE TRANSFERS FROM HIS "ALLY" BANK ACCOUNT. $1,162.07 WAS TRANSFERRED ON AUGUST 9, 2019. $5,732.41 WAS TRANSFERRED ON JULY 2, 2019. THESE WIRE TRANSFERS ALSO APPEAR ON THE RECORDS PROVIDED BY PLAINTIFF'S "FIDELITY INVESTMENT" RECORDS.

10. ALSO EVIDENT FROM THE DOCUMENTS PROVIDED BY PLAINTIFF THROUGH THE "FIDELITY INVESTMENT"

7

DOCUMENTS IS A $9,549.54 WIRE TRANSFER DATED APRIL 17, 2019 AND ANOTHER WIRE TRANSFER IN THE AMOUNT OF $5,773.13 DATED MAY 15, 2019.

11. THE RECORD IS UNCLEAR AS TO THE ORIGIN OR DISPOSITION OF THESE FUNDS, BUT IT IS CLEAR THAT PLAINTIFF HAD ACCESS TO SUBSTANTIAL FUNDS DURING THIS PERIOD OF TIME.

12. PLAINTIFF CONTENDS TO HAVE MINIMAL BALANCES IN HIS "ALLY" ACCOUNT. NO EVIDENCE OF HIS CURRENT BALANCE IN THIS ACCOUNT HAS BEEN OFFERED BY PLAINTIFF. EVIDENCE FROM THE "FIDELITY INVESTMENT" ACCOUNT ESTABLISHES LARGE SUMS OF MONEY GOING INTO AND OUT OF THAT ACCOUNT. THE BURDEN TO SHOW THE LACK OF FUNDS RESTS SOLELY ON THE PLAINTIFF. PLAINTIFF FAILED TO MEET THAT BURDEN. THUS, THE INFERENCE WOULD WEIGH AGAINST A FINDING OF INABILITY TO PAY.

13. PLAINTIFF HAS FURTHER SHOWN HIS "ABILITY" TO MAKE PAYMENTS OF $1,718.46 (JULY 3, 2019) AND $1,313.28 (JULY 3, 2019) IN AMEX EPAYMENTS, $107.00 (AUGUST 26, 2019) TO "HOLLYWOOD NAILS" IN LONGVIEW, TEXAS AND $85.00 (JULY 9, 2019) TO "NAILS BY AMY[."] PLAINTIFF HAS CHOSEN TO MAKE SUCH EXPENDITURES WHILE REFUSING TO PAY THE COURT COSTS ASSOCIATED WITH THE FILING OF HIS NUMEROUS LAWSUITS.

14. PLAINTIFF FURTHER OWNS FOUR LOTS IN THE HOLLY LAKE RANCH SUBDIVISION WHICH ARE VALUED AT $1,000.00 EACH BY THE WOOD COUNTY APPRAISAL DISTRICT. PLAINTIFF HAS UNDERVALUED THESE LOTS IN HIS SWORN STATEMENT, CLAIMING THAT EACH IS VALUED AT $400.00.

The trial court concluded, "BASED ON THE ABOVE FINDINGS OF FACT, THE COURT HEREBY FINDS THAT THE PLAINTIFF EITHER HAS THE MONETARY RESOURCES AVAILABLE TO PAY THE COURT COSTS ASSOCIATED WITH HIS MULTIPLE, VOLUMINOUS LAWSUITS OR HAS THE EARNING CAPACITY TO PAY THESE COSTS."

At the hearing, Emerson relied on the fact that his Ally Bank statement dated October 24, 2019, reflected a balance of $19.60.  Yet, this is just a snapshot in time.  The Ally Bank account reflected significant deposits and steady withdrawals.  Emerson chose not to supplement with additional records to show that his account continued to reflect a low balance or that it reflected minimal or no deposits.  Conversely, evidence at the February 2020 hearing showed that Emerson was employed by an attorney and was earning $75.00 an hour.  The evidence further indicated that Emerson had an accounting degree, had worked as a flood claims adjuster at which he earned significant money in 2017, and had attended law school.[5]  He was able to afford certain expenses that could perhaps be viewed as discretionary, but claimed that he could not afford court costs which, in the trial court's estimation, were intentionally run up "due to the voluminous pleadings which are either redundant or unnecessary to pursue any of his causes of action."[6]

On this record, we conclude that the trial court did not abuse its discretion by finding that Emerson failed to carry his burden under Rule 145 and is therefore not unable to afford payment of court costs.  *See* TEX. R. CIV. P. 145(f)(5); *Basaldua v. Hadden*, 298 S.W.3d 238, 241 (Tex. App.—San Antonio 2009, no pet.) (per curiam); *see also Silver*, 2019 WL 5196402, at *2 (record as a whole fails to show "by a preponderance of the evidence that [Emerson] would be unable to pay the costs, or a part thereof, or give security therefor, if he really wanted to and made a good-faith effort to do so").

---

[5]Although Emerson's Statement indicated that he had student loan debt in excess of $200,000.00, there is no listing of any payment on this debt under the total monthly expenses portion of the Statement.

[6]The cost of the clerk's record is substantial, due in large part to copying fees.  The trial court indicated that much of the record is redundant.

## IV.     Conclusion

We affirm the trial court's order.

Scott E. Stevens
Justice

Date Submitted:     April 13, 2020
Date Decided:       April 20, 2020